[Cite as *Trautman v. Union Ins. Co.*, 2010-Ohio-1504.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

KAREN TRAUTMAN,                                  CASE NO. 5-09-34

   PLAINTIFF-APPELLANT,

 v.

UNION INSURANCE COMPANY, ET AL.,          O P I N I O N

   DEFENDANTS-APPELLEES.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2008 CV 914

Judgment Reversed and Cause Remanded

Date of Decision:  April 5, 2010

APPEARANCES:

   *Ralph D. Russo* for Appellant

   *Timothy J. Fitzgerald* for Appellees

**WILLAMOWSKI, P.J.,**

{¶1} Plaintiff-Appellant Karen Trautman ("Trautman") appeals the judgment of the Hancock County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee, Union Insurance Company, et al. ("Union Insurance"), and denying Appellant's cross motion for summary judgment on the question of the extent of coverage provided by a commercial insurance policy issued by Union Insurance. Trautman contends that her insurance policy provided for payments for loss of business income and extra expense and that Union Insurance should have paid her claim. For the reasons set forth below, the judgment is reversed.

{¶2} In August 2007, a torrential rainfall fell upon Hancock County. At the time, Trautman was leasing a retail establishment located at 506 South Main Street, Findlay, Ohio. Because of the tremendous amount of rainwater flowing into area storm sewers, water backed up through the drains located inside the building which housed Trautman's business, Trautman's Interiors, causing severe damage to her business property. Because of this damage, Trautman ceased all business operations for several weeks.

{¶3} Trautman submitted a claim on the commercial insurance policy she had purchased from Union Insurance. Union Insurance paid the portion of her

claim for property damage due to the water back-up but denied coverage for loss of business income and extra expense.

{¶4} Trautman's policy provided coverage for losses of business income and extra expense pursuant to sections "f" and "g" under "A.5. Additional Coverages," provided that they resulted from a "Covered Cause of Loss." The pertinent sections are:

**f.     Business Income**

**(1)     Business Income**

**(a)     We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration."  The suspension must be caused by direct physical loss or damage to the property at the described premises.  *The loss or damage must be caused by or result from a Covered Cause of Loss.*"**  (Emphasis added.)

**g.     Extra Expense**

**(1)     We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises.  *The loss or damage must be caused by or result from a Covered Cause of Loss.*"**  (Emphasis added.)

Union Insurance contended that Trautman's business income loss and extra expense were not caused by a "covered cause of loss" and denied payment.

{¶5} In December 2008, Trautman filed a complaint for declaratory judgment. Trautman acknowledged that Union Insurance's standard insurance policy, without any special riders or endorsements, excluded coverage for water

back-up (section "B.1.g. Water"). However, Trautman purchased coverage for "Water Back-up and Sump Overflow" through an endorsement to the policy ("water back-up endorsement"). Because she had purchased this additional coverage for water back-up, Trautman believed that water back-up was now a "covered cause of loss" under her modified policy and that she was entitled to payment for the loss of business income and extra expense.

{¶6} Union Insurance answered the complaint and shortly thereafter filed a motion for summary judgment. Union maintained that the insurance policy did not define the water damage that Trautman sustained as a "covered cause of loss." Under section "A.3." of the policy, "Covered Causes of Loss" are described to be:

**Risks of direct physical loss unless the loss is:**

a. **Excluded in Paragraph B. Exclusions in Section 1;**

**\*\*\***

Union Insurance argued that the water back-up endorsement that Trautman purchased applied only to the direct physical damage to her property and that the water back-up endorsement did not extend to any business income coverage or extra expense coverage.

{¶7} Trautman filed a cross-motion for summary judgment arguing that, as a result of the replacement of the original policy exclusion with the language of the water back-up endorsement, the damage to Trautman's business property must be deemed to have been caused by a "covered cause of loss." Trautman included

the report of Union Insurance's adjustor, who stated that the business income and extra expense would be covered under the business owner's water back-up endorsement. Trautman also submitted affidavits from two other insurance companies' agents stating that, when issuing similar water back-up endorsements, they have added specific exclusionary language to these endorsements when the intention was to exclude loss of income and extra expense coverages.

{¶8} On September 29, 2008, the trial court issued its final judgment entry granting Union Insurance's motion for summary judgment and declaratory relief and overruling Trautman's motion for summary judgment. The trial court found that the business owner's policy of insurance and water back-up endorsement did not provide coverage for Trautman's business loss and extra expense.

{¶9} It is from this judgment that Trautman appeals, setting forth the following two assignments of error for our review.

### First Assignment of Error

**The trial court erred in overruling [Trautman's] motion for summary judgment and granting [Union Insurance's] motion for summary judgment because [Trautman's] business owner's policy of insurance, together with its endorsement, does provide her coverage for business income loss and extra expense.**

### Second Assignment of Error

**The trial court erred in overruling [Trautman's] motion for summary judgment and granting [Union Insurance's] motion for summary judgment because the language of the policy of**

**insurance was ambiguous and consequently said language should have been construed by the lower court in favor of affording coverage to [Trautman].**

{¶10} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108. This review of a trial court's grant of summary judgment is done independently and without any deference to the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 5. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issues of material fact remain to be litigated; (2) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party; and (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chemical Corp.*, 73 Ohio St.3d 679, 686-687, 1995-Ohio-286, 653 N.E.2d 1196.

{¶11} Insurance policies are contracts and their interpretation is a matter of law for the court. *City of Sharonville v. Am. Employers Ins. Co.,* 109 Ohio St.3d 186, 187, 2006-Ohio-2180, 846 N.E.2d 833, ¶6, citing *Alexander v. Buckeye Pipe Line Co.* (1978)*,* 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. Contract terms are to be given their plain and ordinary meaning. Id. Insurance coverage is determined by reasonably construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide*

*Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380. "Where provisions of a contract of insurance are reasonably susceptible to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." Id., at the syllabus (citations omitted).

{¶12} Furthermore, "an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (emphasis sic.). "The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect." *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488.

{¶13} The party seeking to recover under an insurance policy generally bears the burden of demonstrating coverage under the policy as well as proving a loss. See *Chicago Title Ins. Co. v. Huntington Natl. Bank,* 87 Ohio St.3d 270, 273, 1999-Ohio-62, 719 N.E.2d 955. However, when an insurer denies liability coverage based upon a policy exclusion, the insurer bears the burden of demonstrating the applicability of the exclusion. *Beaverdam Contracting, Inc. v. Erie Ins. Co.,* 3d Dist. No. 1-08-17, 2008-Ohio-4953, ¶19, citing *Continental Ins. Co. v. Louis Marx & Co.* (1980), 64 Ohio St.2d 399, 415 N.E.2d 315, at the syllabus.

{¶14} In the case before us, the parties agree that there are no genuine issues of material fact in dispute. Both parties agree that the insurance policy was in effect at the time of the occurrence and Union Insurance acknowledges that Trautman's business personal property sustained water damage in August 2007. The sole issue is whether the water damage was a "covered cause of loss" under the terms of the insurance policy so as to provide coverage for the business income loss and extra expense Trautman sustained as a result of the water damage. Because both of Trautman's assignments of error are closely related, we shall discuss them together.

{¶15} Section "A" of the standard policy outlines "Coverage" and section "B" covers "Exclusions," stating in section "B.1." that "[w]e will not pay for loss or damage caused directly or indirectly by any of the following. ***" Pertinent to this action is exclusion "B.1.g." in the original standard policy, which states:

**g.     Water**

**(1)     Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;**

**(2)     Mudslide or mudflow**

**(3)     *Water that backs up or overflows from a sewer, drain or sump;* or**

**(4)     Water under the ground surface pressing on, or flowing or seeping through ***.**

(Emphasis added.)

{¶16} However, Trautman purchased a "Water Back-up and Sump Overflow" endorsement which states that "[t]his endorsement *changes* the policy" and "[t]his endorsement *modifies* insurance provided under the following: Businessowners Coverage Form." (Emphasis added.) "Businessowners Coverage Form" is the title given to the entire insurance policy. The water back-up endorsement states that the insurance company would pay for direct physical loss or damage to the covered property resulting from water which backs up through or overflows from a sewer or drain. The water back-up endorsement further specifies other aspects of the coverage and certain exclusions, such as losses due to failure to maintain a sump pump, etc. Section "D" of the water back-up endorsement added to the policy states:

> **With respect to the coverage provided under this endorsement, Exclusion B.1.g. Water in Section I – Property *is replaced* by the following exclusion:**
>
> **f.     Water**
>
> **(1)     Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;**
>
> **(2)     Mudslide or mudflow**
>
> **(3)     Water under the ground surface pressing on, or flowing or seeping through \*\*\*.**
>
> (Emphasis added.)

{¶17} Therefore, the original, standard policy section "B.1.g.(3)" exclusion for water back-up is no longer a part of section "B.1.g." – it has been fully replaced by the new section from the water back-up endorsement.

{¶18} Union Insurance did not question paying for the property damage caused by the sewer back-up under the water back-up endorsement and acknowledged that Trautman had coverage for property damage. However, Union Insurance argues that water back-up is not a "covered cause of loss" for any other purposes.

{¶19} Section A.3. of the policy, which defines "covered causes of loss," states that covered causes of loss are "[r]isks of direct physical loss unless the loss is *** [e]xcluded in Paragraph B. Exclusions in Section 1." Therefore, according to the *original* exclusion "B.1.g." in the standard policy, back-up water was not a "covered cause of loss." However, the water back-up endorsement changed the standard policy and replaced the original B.1.g. exclusion. As modified by the endorsement, water back-up is no longer part of exclusion B.1.g, so it would not be excluded from the definition of "covered causes of loss." The water back-up endorsement modified the policy and, according to the changes made by the replacement section "B.1.g." in the endorsement, we find that water back-up is no longer excluded from the definition of a "covered cause of loss."

{¶20} Union Insurance further argues that the endorsement only extends coverage for "physical loss or damage" and does not provide for loss of business

income or extra expense. Presumably, this is because section "A" of the water back-up endorsement states that "we will pay for direct physical loss or damage to Covered Property ***." However, this is the same language used in section "A" of the entire standard policy. If this interpretation was used, then coverage for business income loss or extra expense would not be applicable to *any* "physical loss or damage" and any coverage under those sections would be illusory. An insurance provision is illusory when it appears to grant a benefit to the insured, although in reality it does not. *Beaverdam*, supra, 2008-Ohio-4953, at ¶49. Courts are not inclined to give insurance provisions a meaning that would render them illusory. *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶133; *Talbert v. Continental Cas. Co.,* 157 Ohio App.3d 469, 2004-Ohio-2608, 811 N.E.2d 1169, ¶9.

{¶21} Union Insurance also claims that the language of the introductory paragraph of section "D" of the water back-up endorsement states that the "endorsement replaces Exclusion B.1.g. Water in Section I Property so as to remove '[w]ater which backs up or overflows from a sewer, drain or sump', *but only* '[w]ith respect to the coverage provided under this endorsement'" and that such coverage did not include business income or extra expense coverage. (Appellee's Brief, p. 12, emphasis added.) However, the endorsement does *not* specify that the replacement of exclusion B.1.g. is effective "but only" with respect to property damage covered by the endorsement – those words are found

in Union Insurance's argument, but not in the policy or endorsement. The water back-up endorsement does not use the word "only" to narrow the coverage, nor does it exclude other coverages. The heading of the water back-up endorsement specifically states that it modifies the "Businessowners Coverage Form," i.e., the *entire* policy. Union Insurance wrote the policy, and it could have included the words "but only," or otherwise narrowed the coverage of the endorsement if that was its intent, but it did not do so.

{¶22} We do not find Union Insurance's reading of section "D" to include the addition of the phrase "but only" to be a reasonable interpretation of the language in the endorsement. Even if this interpretation could possibly be inferred, it would at most render the paragraph ambiguous and, therefore, it would have to be interpreted in favor of the insured. See *Bosserman Aviation Equip., Inc. v. U.S. Liab. Ins. Co.*, 183 Ohio App.3d 29, 2009-Ohio- 2526, 915 N.E.2d 687, ¶12. When the provisions of an insurance policy are reasonably susceptible to more than one interpretation, any reasonable construction which results in coverage for the insured must be adopted by the trial court. *Nationwide Mut. Ins. Co. v. Wright* (1990)*,* 70 Ohio App.3d 431, 434, 591 N.E.2d 362.

{¶23} In its decision granting summary judgment in favor of Union Insurance, the trial court concluded:

> **While the policy and endorsement are not absolute models of clarity, when Sections A and D of the Endorsement are read together they can reasonably be construed to deny the coverage**

-12-

**as sought by [Trautman.] The Court finds that the contractual language at issue notifies a reasonably prudent person that income and expense losses are not covered under the endorsement if caused by water backup.**

We completely agree with the trial court's finding that the policy and endorsement "are not absolute models of clarity." However, in finding that the endorsement could "reasonably be construed" to deny coverage, the trial court did not apply the correct standard. It did not find that this was the *only* reasonable construction that a reasonably prudent person could find in interpreting the contract. Furthermore, the trial court "construed" the denial of coverage by reading reading "Sections A and D of the Endorsement" together. However, the endorsement does not stand alone. It clearly states that it modifies the policy as a whole, and therefore, the endorsement must be read in conjunction with the rest of the policy. Given that Trautman's reading of the contract is also reasonable, if not more so, then the interpretation that results in coverage for the insured must be adopted. See *Nationwide Mut. Ins. Co. v. Wright*, supra.

{¶24} Union Insurance further cites four cases where it claims a court considered policy language similar to that in this policy and where the court ruled in favor of the insurer. We find that each of these cases either does not involve the issue presented here or they are clearly distinguishable from the specific policy provisions before this Court. Much closer on point is the United States District Court case cited by Trautman, *Dream Spa, Inc. v. Fireman's Funds Ins.*, (Feb. 6,

2008), S.D.N.Y. No. 06-CV-13142, 2008 WL 355458 where the district court found that the water damage endorsement replaced the basic policy exclusion as if it was never there and so the insured's water damage was a covered cause of loss for purposes of the business income coverage.

**{¶25}** Union Insurance's policy with Trautman did not clearly and unambiguously exclude coverage for her claimed loss of income and extra expense arising from the damage to her property from water back-up. Union Insurance has failed to meet its burden to show the clear application of the exclusion. Therefore, this Court must interpret the policy in favor of Trautman as providing coverage for loss of income and extra expense.

**{¶26}** Trautman's assignments of error are well taken and are sustained. The judgment of the Hancock County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment Reversed and Cause Remanded*

**ROGERS and SHAW, J.J., concur.**

**/jnc**