OPINION
{¶ 1} Plaintiff-Appellant, Donald Howard, appeals a judgment of the Defiance County Court of Common Pleas granting summary judgment in favor of Appellee-Defendant, Davidson-Brown Corporation ("D.B."). On appeal, Howard contends that the trial court erred in granting summary judgment, because there is a genuine issue of material fact. Finding that there is no genuine issue of material fact, we affirm the judgment of the trial court.
 {¶ 2} In November and December of 2000, Howard was working on a General Motors Plant jobsite in Defiance, Ohio. Howard was working as an experienced ironworker and was employed by D.B. Howard and the other D.B. employees were working on erecting steel for a building.
 {¶ 3} On December 4, 2000, at approximately 3:00 p.m., Howard and the rest of the D.B. crew were beginning to wrap up the job for the day. At that time, the crew was told by Robert Mapes, the crew foreman, that they were to extend the jib of the crane that the men had been using on the job. In the process of extending the jib, Howard and Brian Carder, another crew member, climbed onto the crane and were standing on the boom, which was approximately thirteen feet in the air. Howard and Carder were on top of the boom to remove and reattach the necessary pins during the jib erection. While standing on the end of the boom, after the pins had been pulled out and the jib was ready to be assembled, Mapes held on to a rope connected to the end of the jib in order to maneuver the jib into place. While Mapes was trying to maneuver the jib into place, the jib swung out and struck a steel column. At that point, the entire crane was dislodged and Howard fell from the top of the boom. As a result of the fall, Howard was injured.
 {¶ 4} In November of 2001, Howard filed a complaint against D.B., claiming that D.B. had caused his injuries through an intentional workplace tort.[1] In December of 2002, D.B. filed a motion for summary judgment. In January of 2003, Howard filed his motion in opposition to D.B.'s motion for summary judgment. In August of 2004, the trial court granted D.B.'s motion for summary judgment. It is from this judgment Howard appeals, presenting the following assignments of error for our review.
 Assignment of Error No. 1 The trial court erred in granting the appellee's motion for summaryjdugment on the grounds that the trial court did not correctly apply theohio administrative code.
 Assignment of Error No. II The trial court committed prejudicial error when it granteddefendant-appellant's motion for summary judgment in its judgment entrydated August 26, 2004, on the grounds that a genuine issue of materialfact exists as to whether defendant-appellee committed an "intentionaltort" which constituted the proximate cause of plaintiff-appellant'sinjuries.
 Assignment of Error Nos. I II {¶ 5} In the first assignment of error, Howard asserts that the trial court erred in granting summary judgment on the grounds that the trial court did not correctly apply Ohio Administrative Code4121:1-3-03(J)(1). In the second assignment of error, Howard asserts that the trial court erred in granting D.B.'s motion for summary judgment, because a genuine issue of material fact remained as to whether D.B. had committed an intentional tort. Because both of these assignments of error deal with summary judgment, we will address them together.
 Standard of Review {¶ 6} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distrib. Co., 148 Ohio App.3d 596,2002-Ohio-3932, at ¶ 25, citing State ex rel. Cassels v. Dayton CitySchool Dist. Bd. of Ed. (1994), 69 Ohio St.3d 217, 222. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C);Horton v. Harwick Chemical Corp. (1995), 73 Ohio St.3d 679, 686-687. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
 {¶ 7} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. State ex rel. Burnes v. Athens City Clerkof Courts (1998), 83 Ohio St.3d 523, 524; see, also, Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 Workplace Intentional Tort {¶ 8} In Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115, 119, the Ohio Supreme Court held:
[I]n order to establish `intent' for the purpose of proving theexistence of an intentional tort committed by an employer against anemployee, the following must be demonstrated: (1) the employer hadknowledge of the existence of a dangerous process, procedure,instrumentality, or condition within its business operation; (2) theemployer had knowledge that if the employee is subjected by hisemployment to such danger then harm to the employee will be a substantialcertainty; and (3) that the employer, with such knowledge and under suchcircumstances, did act to require the employee to continue to perform thedangerous task.
 {¶ 9} Additionally, the Fyffe Court outlined the proof necessary to establish intent on the part of the employer, stating that:
To establish an intentional tort of an employer, proof beyond thatrequired to prove negligence and beyond that to prove recklessness mustbe established. Where the employer acts despite his knowledge of somerisk, his conduct may be negligence. As the probability increases thatparticular consequences may follow, then the employer's conduct may becharacterized as recklessness. As the probability that the consequenceswill follow further increases, and the employer knows that injuries toemployees are certain or substantially certain to result from theprocess, procedure or condition and he still proceeds, he is treated bythe law as if he had in fact desired to produce the result. However, themere knowledge and appreciation of a risk — something short ofsubstantial certainty — is not intent.
 {¶ 10} In the case sub judice, Howard asserts that D.B.'s actions rise to the level of a workplace intentional tort. Upon review of the record, we find that, even when viewing the evidence in the light most favorable to Howard, he is unable to show that D.B.'s actions, or failure to act, rise to such a level. Specifically, we find that Howard is unable to meet the first, second or third elements of the Fyffe test.
 {¶ 11} It is clear from the depositions, that Mapes, the crew foreman, did instruct the crew that they needed to erect the jib of the crane. However, it is also clear from the depositions, that Howard was not required to go about the task of erecting the jib in the manner that he did. In his deposition, Howard states that he could have preformed the task of erecting the jib of the crane by using a man lift, which is another piece of machinery that would lift him to the height of the jib, so that he would not have to walk out onto the boom of the crane. Additionally, several other members of the crew, including Brian Carder, Michael Hall, Andrew Jackson and Bob Mapes, all stated that the erection of the jib could be completed from either the man lift or a ladder. Finally, there was testimony that both a man lift as well as several ladders were available on the jobsite.
 {¶ 12} Thus, while there is evidence showing that Howard was told to erect the jib, there is no evidence that he was required to perform that act in the manner in which he performed it. As he has himself admitted, there were several alternative ways to perform the task, which would have prevented him from ascending the boom. Based upon the above evidence, we find that even when viewing the evidence in the light most favorable to Howard, he has failed to establish any of the elements of the Fyffe
test.
 {¶ 13} Considering elements one and two together, Howard is, first, required to show that D.B. had knowledge of a dangerous process, procedure, instrumentality or condition within its business. Additionally, Howard must show that with such knowledge, D.B. knew that if an employee were subjected to such dangerous process, procedure, instrumentality or condition, then harm to the employee was substantially certain. As stated above, while knowledge that climbing out on a jib may have risen to such a level, we cannot find that D.B. had knowledge that erecting the jib, in and of itself, was a dangerous process nor that harm was substantially certain to result. Furthermore, based upon the safe alternative available to Howard at the time, we find further support for the finding that the erection of the crane was neither a dangerous process nor substantially certain to result in harm.
 {¶ 14} Finally, we note that the Ohio Supreme Court recently held that "the third element of the Fyffe test can be satisfied by presenting evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in that dangerous task."Gibson v. Drainage Products, Inc., 95 Ohio St.3d 171, 2002-Ohio-2008, ¶24. Based on the above finding that erecting the jib was not a dangerous task, due to the alternative methods available in this case, the third prong must also fail.
 {¶ 15} Furthermore, Howard argues that D.B. should be liable for their failure to provide certain safety equipment. Here, Howard's own deposition provides that he did have the proper safety gear, but that he chose not to wear that safety equipment when performing this task. Additionally, there is no evidence that Howard was directed to work without using his safety equipment. Finally, there is no evidence that erecting the jib in one of the safer, alternative methods would have required such safety equipment. Therefore, based on the fact that in this case there were ample, alternative methods for performing the task, which would not have required Howard to utilize his safety equipment, we find that Howard's argument is without merit.
 {¶ 16} Thus, having found that Howard is unable to establish the first, second or third elements of the Fyffe test, we find that Howard's claim must fail. As such, the second assignment of error is overruled.
 {¶ 17} In the first assignment of error, Howard asserts that the trial court erred in granting summary judgment on the grounds that the trial court did not correctly apply Ohio Administrative Code4121:1-3-03(J)(1).
 {¶ 18} Ohio Administrative Code 4121:1-3-03(J)(1) requires that "[l]ifelines, safety belts or harnesses and lanyards shall be provided by the employer, and [that] it shall be the responsibility of the employee to wear such equipment when * * * exposed to hazards of falling * * * more than six (6) feet above the ground * * *."[2]
 {¶ 19} According to Howard, D.B. failed to provide lifelines, which were required under the above code section. Furthermore, Howard argues that pursuant to Slack v. Henry (Dec. 1, 2000), 4th Dist. No. 00 CA 2704, unreported, the failure to comply with a safety regulation is relevant in showing that an employer required an employee to perform a dangerous task and that the employer had sufficient knowledge that such a task was substantially certain to cause injury. In other words, Howard claims that D.B.'s failure to comply with the Ohio Administrative Code section 4121.1-3-03(J)(1) raises an issue of fact under the first two elements of the workplace intentional tort standard.
 {¶ 20} Based on our finding that Howard had alternative methods of performing the task, which would not have required the use of such safety equipment, we find it unnecessary to consider this issue. Accordingly, the first assignment of error is overruled.
 {¶ 21} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Bryant and Shaw, J.J., concur.
[1] We note that Howard's wife filed a similar count for loss of consortium. However, no notice of appeal has been filed on the dismissal of her claim.
[2] While Ohio Administrative Code 4121:1-3-03(J)(1) was in effect at the time of Howard's accident, it has since been repealed and re-numbered as 4123:1-3-03(J)(1), effective November 1, 2003.